UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
_____
                               :
CSC SCIENTIFIC COMPANY, INC.,  :
                               :
                               :
             Plaintiff,        :
                               :   Before: Richard K. Eaton, Judge[1]
        v.                     :
                               :   Court No. 08-civ-10207 (RKE)
MANORCARE HEALTH SERVICES,     :
INC.,                          :
                               :
             Defendant.        :
_____:
```

## OPINION AND ORDER

Eaton, Judge: This matter comes before the court on defendant Manorcare Health Services, Inc.'s ("Manorcare" or "defendant") motion for summary judgment on plaintiff CSC Scientific Company, Inc.'s ("CSC Scientific" or "plaintiff") claims for contractual and common law indemnification and breach of contract.  The court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) (2006).  For the reasons set forth herein, defendant's motion is granted and plaintiff's claims are dismissed.


## I.  Factual and Procedural Background

Plaintiff CSC Scientific commenced this action, seeking

---

[1]     Judge Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

indemnification from Manorcare for amounts plaintiff paid to non-party VWR International ("VWR") in connection with a tort claim filed against VWR by Philip Yelin[2] ("Yelin") in the Supreme Court of the State of New York, County of Westchester (the "Yelin Action"). The Yelin Action involved claims that he was injured as a result of his exposure to asbestos or asbestos-containing products manufactured or sold by "Cenco," "Central Scientific Company," and other defendants between 1957 and 1987. Def.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1 ¶¶ 29-30 ("Def.'s 56.1 Statement").[3]

Between 1957 and 1987, Manorcare, CSC Scientific, and VWR serially owned the assets of the Central Scientific business, which sold "scientific educational products and selected industrial equipment" under the "Cenco" brand. Def.'s 56.1

---

[2]    Mr. Yelin died in May 2005. *See* Def.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1 Statement") ¶ 31. Ms. Irma Yelin, as Administratrix for the Estate of Philip Yelin and Irma Yelin, individually, continued to pursue the Yelin Action. *See* Pl.'s Compl. ¶ 17. Both Manorcare and VWR settled with the plaintiff in the Yelin Action. *See* Def.'s 56.1 Statement ¶ 39. Thereafter, CSC Scientific settled VWR's third-party claim for contractual indemnification. *See* Def.'s 56.1 Statement ¶ 40.

[3]    Pursuant to Loc. R. 56.1, upon a motion for summary judgment, the moving party must submit a Statement of Undisputed Material Facts. Loc. R. 56.1. Unless specifically disputed by the nonmoving party, the facts are deemed admitted for the purposes of the motion. *See id.* at §§ 56.1(b)-(c). Here, plaintiff did not submit a Statement of Undisputed Material Facts in opposition to those submitted by defendant. Therefore, the facts alleged in Def.'s 56.1 Statement are presumed to be true.

2

Statement ¶¶ 5, 8.  On July 31, 1976, Manorcare, which had owned
the Central Scientific business since at least 1957, sold the
assets to CSC Scientific.  Def.'s 56.1 Statement ¶¶ 3-6; *see also*
Acquisition Agreement Between Manorcare and CSC Scientific (the
"Manorcare-CSC Agreement"), Lee Decl., Ex. B.  On April 17, 1979,
CSC Scientific sold the material assets of the Central Scientific
business to VWR.  Def.'s 56.1 Statement ¶¶ 18-20; *see also*
Acquisition Agreement Between CSC Scientific and Manorcare (the
"CSC-VWR Agreement"), Lee Decl., Ex. C.  Thus, before 1976,
Manorcare owned the Central Scientific business, between 1976 and
1979 CSC, Scientific owned the business, and after 1979 VWR was
the owner.

     The Yelin Action ultimately included claims against
Manorcare and VWR, but not against CSC Scientific.  *See* Def.'s
56.1 Statement ¶¶ 29-30.  In June 2007, VWR filed a third-party
claim again CSC Scientific, for contractual indemnification under
the CSC-VWR Agreement, for any losses it might incur in the Yelin
Action.  Def.'s 56.1 Statement ¶¶ 32-33.  Under the CSC-VWR
Agreement, CSC Scientific promised to "indemnify, defend, and
hold [VWR] harmless" for "any and all obligations, liabilities,
damages, claims and expenses arising out of or related to
ownership of the [domestic education] assets[4] prior to [April 17,

---

[4]     These assets constitute the Central Scientific
business.

3

1979]," and "all [related] suits, actions, proceedings, claims, and assessments against [VWR]." Def.'s 56.1 Statement ¶ 21; CSC-VWR Agreement ¶¶ 18(a), (c).

CSC Scientific moved for summary judgment in the Yelin Action on VWR's third-party claims. The State Court granted CSC Scientific's motion for summary judgment, in part. In doing so, the Court held:

> summary judgment with respect to the claim for contractual indemnification is granted to the extent that it is determined that the period of contractual liability is limited, pursuant to the [CSC-VWR Agreement], to the CSC [Scientific's] products, if any, that were manufactured, distributed, or supplied containing asbestos to [Yelin's] business during the period August 31, 1976 to April 1, 1979. CSC [Scientific] did not assume liability for the products of its predecessor prior to 1976.

Order, *Yelin v. Amchem. Prods. Inc.*, Index No. 1578-05 (Sup. Ct. Westchester Co. June 30, 2008), Lee Decl., Ex. H (the "State Court Order"). In other words, the Court held that CSC Scientific's contractual liability to VWR was limited to any asbestos-containing products supplied to Yelin's business during the period August 31, 1976 to April 1, 1979.[5] This period coincides with CSC Scientific's ownership of the Central Scientific business's domestic education assets.

In October 2008, both Manorcare and VWR settled with the

---

[5]    Apparently, the date of August 31, 1976 was a mistake and the proper date is July 31, 1976, the date that the sale contemplated in the Manocare-CSC Agreement occurred.

4

plaintiff in the underlying Yelin Action.  Def.'s 56.1 Statement ¶ 39.  Subsequently, CSC Scientific and VWR settled VWR's third-party contractual indemnification and defense costs claims.  *See* Settlement Agreements dated October 23, 2008 and April 16, 2009 (collectively, the "CSC-VWR Settlement"), Def.'s 56.1 Statement ¶ 40.[6]

On October 28, 2008, CSC Scientific commenced this action against Manorcare to recover amounts paid by CSC Scientific to VWR under the CSC-VWR Settlement, seeking: (1) contractual indemnification under the Manorcare-CSC Agreement, (2) common law indemnification, and (3) damages from breach of the Manorcare-CSC Agreement.  *See* CSC-VWR Agreement ¶¶ 18(a), 18(c); *see also* Pl's Compl. ¶¶ 54-57, 60, 63.[7]

---

[6]    Under the CSC-VWR Settlement, CSC Scientific paid VWR $250,000 in consideration for CSC Scientific's release from its contractual obligation to indemnify or contribute to VWR's potential liability to Yelin.  Def.'s 56.1 Statement ¶ 44.  CSC Scientific also paid VWR $242,256.96 for CSC Scientific's release from its contractual obligation to indemnify VWR for VWR's costs incurred defending the Yelin action.  Def.'s 56.1 Statement ¶ 48.

[7]    In its Complaint, CSC Scientific also asserted a claim for contribution against Manocare.  This claim was dismissed pursuant to Manorcare's motion under Fed. R. Civ. P. 12(b)(6) because New York Gen. Obl. Law § 15-108(b) bars claims by or against settling tortfeasors for contribution.  *See* Order, *CSC Scientific, Inc. v. Manocare Health Servs., Inc.,* Case No. 08-Civ-10207 (S.D.N.Y. Jan. 7, 2010), Lee Decl., Ex. K; *see also Rosado v. Proctor & Schwartz, Inc.,* 484 N.E.2d 1354, 1356 (N.Y. 1985).

5

## II.   Standard of Review

A party is entitled to summary judgment if "there is no
genuine issue as to any material fact and the movant is entitled
to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A
genuine issue of material fact exists if admissible evidence has
been submitted that could enable a reasonable jury to decide in
the nonmoving party's favor.  *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986).  Traditionally, "'in a contract suit,
summary judgment may be granted only where the language of the
contract is unambiguous.'"  *Chock Full O'Nuts Corp. v. Tetley,
Inc.*, 152 F.3d 202, 204 (2d Cir. 1998) (quoting *Nowak v.
Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir.
1996)).  Even when ambiguities exist, however, summary judgment
is appropriate if the moving party would prevail under any
reasonable interpretation of the contract.  *See id*.

## III.   CSC Scientific's Claims Are Not for Contribution and Are Not Barred by New York Statute

As a threshold issue, the court must determine whether CSC
Scientific's claims are for indemnification or for contribution
because New York General Obligations Law § 15-108(b) bars all
claims for contribution by or against a settling tortfeasor.  A
settling tortfeasor may, however, sue or be sued for
indemnification.  *See Rosado v. Proctor & Schwartz, Inc.*, 484

6

N.E.2d 1354, 1356 (N.Y. 1985) ("In order to remove a disincentive to settlement, the Legislature amended General Obligations Law § 15-108 to provide that a settling tort-feasor can neither obtain, nor be liable for, a contribution claim"); *McDermott v. City of New York*, 406 N.E.2d 460, 464 (N.Y. 1980) ("Section 15-108 was generally designed to foster settlements in multiple party tort cases by prescribing the effects of the settlement and altering rules of law which were not conducive to the negotiating process."); *see also* 2007 Recommendations of the Advisory Committee on Civil Practice, S.B. 3739, 2007 Leg., 230th Sess. (NY 2007).

The distinction between indemnification and contribution is well-settled under New York law.  Contribution shifts a loss ratably among joint tortfeasors in proportion to fault.  *See McDermott,* 406 N.E.2d at 461-62; *see also* SIEGEL, NEW YORK PRACTICE § 169 (4th ed. 2005).  That is, a claim for contribution seeks to shift a portion of a tortfeasor's loss to another based on the other party's degree of responsibility for the tort.[8]

---

[8]     *Tokio Marine Fire Ins. Co. v. McDonnell Douglas Corp.*, 465 F. Supp. 790, 794 (S.D.N.Y 1978) ("A party seeking contribution seeks less than 100% of the judgment rendered against him and necessarily admits at least partial culpability for the underlying tort. The party seeking indemnity attempts to shift the entire burden of the judgment upon another party on the ground that that other party is actually or 'primarily' responsible for the tort.")

By way of contrast, indemnification shifts a tortfeasor's entire loss to another. *D'Ambrosio v. New York*, 435 N.E.2d 366, 369 (N.Y. 1982) ("[W]here one is held liable solely on account of the negligence of another, indemnification, not contribution, principles apply to shift the entire liability to the one who was negligent."). Indemnification may arise from either an express or implied contractual obligation. See *McDermott*, 406 N.E.2d at 462 ("[I]ndemnity . . . springs from a contract, express or implied, and full, not partial, reimbursement is sought.") (citation omitted).

Although indemnification is classically applied in situations where one is held vicariously liable for another's tort, this is not its only application. See *Rosado*, 484 N.E.2d at 1356; *see also McDermott*, 406 N.E.2d at 1354. An indemnification cause of action may also exist where some independent duty to indemnify exists between two parties. *Rosado*, 484 N.E.2d at 1356 (citing *Garrett v. Holiday Inns, Inc.*, 450 N.Y.S.2d 619, 621 (N.Y. App. Div. 1982), *modified on other grounds* 447 N.E.2d 717; *see also* Restatement (Second) of Torts § 886B (1965). This independent duty to indemnify may arise from an agreement between the putative indemnitor and indemnitee. See *Gibbs-Alfano v. Ossining Boat & Canoe Club, Inc.*, 281 F.3d 12, 20 (2d Cir. 2002).

Manorcare argues that plaintiff's indemnification claims are

for contribution and that because CSC Scientific is a settled tortfeasor, it is precluded from seeking contribution by the New York General Obligations Law § 15-108(b).  Def.'s Mem. L. Supp. Mot. S. J. ("Def.'s Mem.") 4-5.  CSC Scientific counters that its claims are for indemnification because it seeks to shift its entire loss from the CSC-VWR Settlement to Manorcare and, thus, its claims are not barred by New York General Obligations Law § 15-108(b).  Pl.'s Mem. L. Opp. Mot. S. J. ("Pl.'s Mem.") 3-5.

The court finds that CSC Scientific's claim is, indeed, for indemnification because it hopes to recover 100% of the amounts it paid to VWR from Manorcare.  CSC Scientific settled with VWR as a result of its contractual obligation under the CSC-VWR Agreement to indemnify VWR for any losses relating to asbestos-laden products manufactured, supplied, or distributed between August 31, 1976 and April 1, 1979.  CSC Scientific seeks to recover its whole loss from the CSC-VWR Settlement from Manorcare based on, what it claims to be, Manorcare's contractual or common law duty to indemnify CSC Scientific for these losses.  CSC Scientific admits no fault for the amounts paid and is not seeking a mere ratable recovery based on proportionate fault or responsibility.  In other words, rather than seeking to recover only some portion of its liability from Manorcare, CSC Scientific seeks to hold Manorcare responsible for the entire amount it paid VWR.

Accordingly, the court finds that CSC Scientific's claims are properly classified as indemnification. Therefore, they are not barred by New York General Obligations Law § 15-108(b).

## IV.   Plaintiff's Contractual Indemnification Claim

Next, defendant argues that CSC Scientific's claim for contractual indemnification is barred by the express terms of the CSC-Manorcare Agreement. According to Manorcare, CSC Scientific's contractual obligation to VWR arose from acts for which liability was expressly assumed by CSC Scientific under the Manocare-CSC Agreement. Manorcare insists, therefore, that any responsibility for amounts paid under the CSC-VWR Agreement is expressly excluded from Manorcare's indemnification obligations under the Manorcare-CSC Agreement. Thus, defendant argues, CSC Scientific's loss is not covered by the indemnification provision of the agreement, which only obligates Manorcare to indemnify CSC Scientific for losses that arise out of its liabilities or obligations that are not expressly assumed by CSC Scientific. Def.'s Mem. 8.

Manorcare highlights two provisions of the Manorcare-CSC Agreement that it contends govern this case — §§ 8.02 and 2.02. Section 8.02 of the Manorcare-CSC Agreement sets forth Manorcare's indemnification obligations. It provides, in relevant part:

10

> [Manorcare] shall indemnify and hold harmless [CSC
> Scientific] from and against any loss, cost, damage or
> expense (including reasonable attorneys' fees) in any
> way arising from or growing out of any claims, debts,
> liabilities and obligations of [Manorcare] <u>which are
> not expressly assumed by [CSC Scientific] pursuant to
> this Agreement</u>.

Manorcare-CSC Agreement § 8.02 (emphasis added). Section 2.02 of

the agreement sets forth those obligations and liabilities

expressly assumed by CSC Scientific. It provides, in relevant

part:

> At the closing, [*CSC Scientific*] shall by appropriate
> written instrument[9] or instruments *assume* and agree to
> pay, perform, and discharge the following (and only the
> following) *liabilities* of [Manorcare]: (a) all
> liabilities and obligations of [Manorcare] arising
> *after the date of the Closing* under all purchase
> orders, leases of real and personal property,
> distribution and similar agreements, sales contracts
> and orders from customers, and other agreements the
> rights under which are transferred from [Manorcare] to
> [CSC Scientific] . . . .

Manorcare-CSC Agreement § 2.02 (emphasis added). Put another

way, CSC Scientific expressly assumed all liabilities and

obligations of Manorcare arising after July 31, 1976 under all

sales contracts, purchase orders, and other agreements that were

transferred to CSC Scientific by the Manorcare-CSC Agreement.

   In order to determine whether the Manorcare-CSC Agreement

obligates Manorcare to indemnify CSC Scientific for amounts paid

---

[9]   No argument has been made that these instruments were
not executed or that this paragraph does not memorialize the
intentions of the parties.

under the CSC-VWR Settlement, the court must interpret §§ 8.02
and 2.02 of the Agreement. Because both parties agree that New
York law governs the interpretation of the Manocare-CSC
Agreement, the court assumes that New York law governs this
diversity action. *See Stagl v. Delta Airlines*, 52 F.3d 463, 467.
(2d Cir. 1995); *see also Erie Ry. Co. v. Tompkins*, 304 U.S. 64
(1938).

Under New York law, the words and phrases of a contract are
given their plain meaning. *Krumme v. Westpoint Stevens Inc.*, 238
F.3d 133, 139 (2d Cir. 2000) (citing *Painewebber v. Bybyk*, 81
F.3d 1193, 1199 (2d Cir. 1996)). Where a contract's terms are
unambiguous, the interpretation of a contract is a question of
law for the court. *See W.W.W. Assocs. v. Giancontieri*, 566
N.E.2d 639, 642 (N.Y. 1990). Whether or not a written contract
is ambiguous also presents a question of law to be resolved by
the Court. *Van Wagner Adver. Corp. v. S & M Enters.*, 67 N.Y.2d
186, 191 (1986). Generally, indemnification obligations are
treated no differently from other contract terms. *See Levine v.
Shell Oil Co.*, 269 N.E.2d 799, 802 (N.Y. 1971). Nevertheless,
"the promise should not be found unless it can be strictly
implied from the language and purpose of the entire agreement and
the surrounding facts and circumstances." *Hooper Assoc. Ltd. V.
AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989) (citing
*Margolin v. New York Life Ins. Co.*, 297 N.E.2d 80, 82-83 (N.Y.

12

1973)).

The court finds that CSC Scientific's indemnification rights are clearly and unambiguously defined by §§ 8.02 and 2.02 of the Manorcare-CSC Agreement. Section 8.02 requires Manorcare to indemnify CSC Scientific for amounts paid as a result of any liabilities or obligations of Manorcare "not expressly assumed by [CSC Scientific]." Section 2.02, in turn, specifies the obligations and liabilities assumed by CSC Scientific. Pursuant to § 2.02 of the Manorcare-CSC Agreement, CSC Scientific's assumption of liability is broad, encompassing all liabilities that "aris[e] after [July 31, 1976] under all purchase orders, leases of real and personal property, distribution and similar agreements, sales contracts and orders from customers, and other agreements the rights under which are transferred from [Manorcare] to [CSC Scientific]." Manorcare-CSC Agreement § 2.02.

To be covered by § 8.02 of the Manorcare-CSC Agreement, CSC Scientific's loss must both be attributable to some liability or obligation of Manorcare and also must not be assumed by CSC Scientific. CSC Scientific's contractual obligation to VWR arose from the sale of asbestos-laden products to Yelin's business after July 31, 1976, and CSC Scientific assumed all liability arising out of "distribution and similar agreements, sales contracts and orders from customers." Thus, the question is

13

whether CSC Scientific's payment to VWR was to compensate for any liability "arising from" some act of Manorcare prior to July 31, 1976. In other words, the dispositive issue is whether the liability that caused CSC Scientific's loss "arose" before or after the Manorcare-CSC Agreement closed on July 31, 1976.

In New York, "it is common practice for the courts . . . to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." *Mazzola v. County of Suffolk*, 533 N.Y.S.2d 297, 297 (N.Y. App. Div. 2d Dep't 1988) (citation omitted). According to Black's Law Dictionary, "arise" means "to originate." Black's Law Dictionary 12 (9th ed. 2009); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (referring to *Black's Law Dictionary* to define "arise" as "come into being" or to "spring-up"). Accordingly, liability arises when the act or omission that causes the injury occurs. *See Hercules, Inc. v. Hexcel Corp.*, 841 N.Y.S.2d 218, 2007 N.Y. Misc. LEXIS 2999, at *6 (Sup. Ct. New York County 2007), *aff'd*, 851 N.Y.S.2d 477 (N.Y. App. Div. 2008), *appeal denied*, 894 N.E.2d 654 (N.Y. 2008) ("[A] claim arises or originates from the act or omission that gave rise to the claim or liability.").

Therefore, if a product sold after July 31, 1976 caused an injury after that date, the liability "arose" when the product was sold. Any loss by CSC Scientific arising from that liability would not qualify for contractual indemnification under § 8.02

14

because it would have been expressly assumed by CSC Scientific under § 2.02 of the Manorcare-CSC Agreement. Stated differently, the liability would have arisen from CSC Scientific's sale of the product for which it expressly assumed liability under the Manorcare-CSC Agreement.

Here, CSC Scientific seeks contractual indemnification for the loss it incurred from the CSC-VWR Settlement. The CSC-VWR Settlement released CSC Scientific from its contractual indemnification obligation to VWR, which was defined by the State Court Order. The State Court Order directed that CSC Scientific would be liable to VWR for any products "manufactured, distributed or supplied containing asbestos" to Yelin's business between August 31, 1976 and April 1, 1979. Because CSC Scientific's liability to VWR is based on sales that, as set forth in the State Court Order, necessarily occurred after July 31, 1976, any liabilities created by those sales arose after the Manorcare-CSC Agreement closed. Thus, because CSC Scientific's contractual obligation to VWR, as defined by the State Court Order, could only have "arisen" from sales made after July 31, 1976, any loss incurred to settle that liability is not covered by § 8.02 of the Manorcare-CSC Agreement, as it was expressly assumed by CSC Scientific under § 2.02 of the agreement. Accordingly, CSC Scientific may not obtain contractual indemnification from Manorcare for amounts paid by CSC Scientific

15

under the CSC-VWR Settlement.

In its brief opposing Manorcare's motion, CSC Scientific appears to focus on § 8.02 by citing cases where courts broadly interpreted parties' agreements to indemnify for "any and all liability." *See Levine*, 269 N.E.2d at 802; *see also Margolin*, 297 N.E.2d at 82-83.  But these cases are inapposite, as neither involved an agreement, like the one at issue here, that specifically excluded certain liabilities and obligations from the contractual indemnification obligations at issue.

CSC Scientific also argues that it is entitled to contractual indemnification because Manorcare conveyed "tainted" inventory that contained asbestos when it sold the Central Scientific business assets on July 31, 1976.  This argument would suggest there are disputed issues of material fact that preclude granting defendant's motion for summary judgment.  Again, however, the State Court Order limited CSC Scientific's liability to VWR to any asbestos-laden products "manufactured, distributed, or supplied" between August 31, 1976 and April 1, 1979.  Thus, even if "tainted" inventory was conveyed on July 31, 1976, CSC Scientific still distributed or supplied it after July 31, 1976. Because CSC Scientific expressly assumed all liabilities in connection with the sale of products after July 31, 1976, even if "tainted" inventory was conveyed, there would be no set of facts that would entitle CSC Scientific to contractual indemnification

16

from Manorcare.  In addition, notwithstanding that discovery in this action is complete, CSC Scientific has produced no evidence to suggest that "tainted" inventory was, in fact, ever transferred to CSC Scientific by Manorcare.

Finally, plaintiff CSC Scientific asserts that the State Court Order and CSC Scientific's subsequent settlement with VWR are not relevant to this contractual indemnification dispute. CSC Scientific argues that "its contribution to VWR, and the fact [sic] and circumstances regarding same as outlined in its motion papers, are not relevant to the issue at hand" because "Manorcare agreed to indemnify CSC [Scientific] for 'any and all' liabilities."  Pl.'s Letter to Judge Eaton (June 23, 2011).  To the contrary, the State Court Order defined CSC Scientific's liability to VWR, which, in turn, defined the loss for which CSC Scientific presently seeks contractual indemnification.  The State Court Order defined CSC Scientific's liability to exclude any liability for which CSC Scientific would be entitled to indemnification under the Manorcare-CSC Agreement.  Accordingly, not only is the State Court Order and the CSC-VWR Settlement relevant to this action, they are dispositive of whether CSC Scientific's loss arose from a liability CSC Scientific expressly assumed under § 2.02 of the Manorcare-CSC Agreement.  Because the court finds that the State Court Order conclusively established that amounts paid by CSC Scientific to VWR were attributable to

17

liability that CSC Scientific expressly assumed under the CSC-Manorcare Agreement, Manorcare's motion for summary judgment on CSC's claim for contractual indemnification will be granted.

## V.  Plaintiff's Common Law Indemnification Claim

CSC argues that, in addition to its right to indemnification under the Manocare-CSC Agreement, it is entitled to common law indemnification.  For its part, Manorcare argues that the Manorcare-CSC Agreement's contractual indemnification clause precludes CSC Scientific's common law indemnification claim because CSC Scientific is not permitted to circumvent the terms of the contract by resorting to the common law.  Def.'s Mem. 3. CSC Scientific responds that it has been compelled to pay for Manorcare's liability under the CSC-VWR Settlement because of the "tainted" inventory conveyed by the Manorcare-CSC Agreement. Accordingly, CSC Scientific contends that the equitable principles of common law indemnification support shifting CSC Scientific's loss to Manorcare.  Pl.'s Mem. 4-5.

Common law or implied indemnification is a "quasi-contract" doctrine rooted in principles of equity and fairness conceptually related to restitution.  *McDermott,* 406 N.E.2d at 462 ("As was true with many unjust enrichment cases, the vehicle through which the law operated was the quasi contract. . . .'  [Where] payment by one person is compelled, which another should have made, a

18

contract to reimburse or indemnify is implied by law'")
(citations omitted).  To achieve an equitable result in
appropriate circumstances, a contract between the parties to
reimburse or indemnify is implied by law.  Importantly, "the
contract is a mere fiction; a form imposed to adapt the case to a
given remedy . . . there has been no agreement or expression of
assent, by word or act, on the part of either party involved."
*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190,
193 (N.Y. 1987) (quoting *Bradkin v. Leverton*, 257 N.E.2d 643, 645
(N.Y. 1970)).

Subject to exceptions not applicable here,[10] a valid and
enforceable contract generally precludes recovery in
quasi-contract for losses arising from the same subject matter.
*Clark-Fitzpatrick*, 516 N.E. at 193; *see also Blanchard v.*

---

[10] When presented with an unambiguous written agreement
expressing the parties' intent to limit a common law obligation,
courts give effect to the parties' expressed written intent.  *See
Clark-Fitzpatrick*, 516 N.E.2d at 193 (precluding recovery in tort
from a breach of contract when no independent duty was violated
and because the terms of the contract governed the breach).
Exceptions to the general rule have been recognized, almost
exclusively in cases involving multiple insurers covering a
single insured.  In those cases, coexisting common law and
contractual indemnification claims concerning the same subject
matter are recognized where the classification of the claim as
common law or contractual is determinative of which party bears
the burden of indemnification, and recognition of both types of
indemnification is required to allocate the responsibility
equitably amongst insurers.  *See, e.g., Hawthorne v. South Bronx
Community Corp.*, 582 N.E.2d 586, 588 (N.Y. 1991) (holding common
law and contractual indemnification may co-exist when separate
insurers covered either risk and plaintiff could recover under
either theory).

*Blanchard*, 94 N.E. 630, 631 (N.Y. 1911) ("a promise by
implication does not exist where the parties have made the
promise express"); *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d
742, 746 (N.Y. 2005) (discussing unavailability of quasi-contract
claim of unjust enrichment given a valid and enforceable
contract); *First Indem. of Am. Ins. Co. v. Shinas*, No. 03 Civ.
6634(KMW)(KNF), 2009 WL 3154282, at *10 (S.D.N.Y. Sept. 30,
2009).

        Here, the parties expressly defined Manorcare's
indemnification obligations in what is conceded to be a valid and
unambiguous written agreement.  Accordingly, CSC Scientific is
precluded from circumventing the Manorcare-CSC Agreement by
proceeding under an equitable theory of common law
indemnification.

        Furthermore, there is little basis in equity to justify
shifting CSC Scientific's payments under the CSC-VWR Settlement
to Manorcare. *See Eastern Air Lines, Inc. v. The Ins. Co. of
Penn.*, 85 F.3d 992, 999 (2d Cir. 1996) (stating that equitable
doctrines are "grounded on notions of fair dealing and good
conscience and [are] designed to aid the law in the
administration of justice where injustice would otherwise
result") (citation omitted).  Both Manorcare and VWR settled the
Yelin action after the State Court Order limited CSC Scientific's
liability to VWR to the period during which CSC Scientific owned

                                  20

the Central Scientific business.   That is, each owner has paid

damages in connection with the Yelin Action that reflect its

respective responsibility for the products that injured their

common victim.   Moreover, as noted above, CSC Scientific has

produced no evidence that Manocare transferred "tainted" goods to

CSC Scientific.

Therefore, the court finds that CSC Scientific's claim for

common law indemnification fails.[11]

## VI. Plaintiff's Breach of the Manorcare-CSC Agreement Claim

Finally, in its motion for summary judgment, defendant

argues that it has not breached the Manorcare-CSC Agreement by

failing to indemnify CSC Scientific for amounts paid to VWR under

the CSC-VWR Settlement.   Def.'s Mem. 11-12.   Rather, Manorcare

reiterates that it is simply not obligated under the Manorcare-

CSC Agreement for the amount CSC Scientific paid to VWR.   Pl.'s

Mem. 10.

The court has found Manorcare has no contractual obligation

to indemnify CSC Scientific because CSC Scientific's loss did not

arise from a liability of Manorcare covered by

---

[11] In its motion for summary judgment, defendant Manorcare
argues that CSC Scientific's common law indemnification claim is
precluded because the CSC-VWR Settlement was voluntary.   Def.'s
Mem. 5-7.   *See Durable Mfg. Co. v. Goodyear Tire & Rubber Co.*,
992 F. Supp. 157, 1581 (S.D.N.Y 1998).   Given the court's
conclusion that both of CSC Scientific's claims are barred, the
court does not address this argument.

§ 8.02 of the Manocare-CSC Agreement.  Given the absence of a contractual obligation on the part of Manorcare to indemnify, the court finds that Manorcare did not breach the Manorcare-CSC Agreement.

**VII.  Conclusion and Order**

For the foregoing reasons, there are no facts that would entitle CSC Scientific to common law or contractual indemnification.  Thus, Manorcare's motion for summary judgment is granted and plaintiff CSC Scientific's claims are dismissed.

It is SO ORDERED.

/S/     Richard K. Eaton
Judge

Dated:     September 27, 2011
           White Plains, New York

22